## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
EDUCATION; and BETSY DEVOS, in her
official capacity as Secretary of the United
States Department of Education,

*Defendants*.

Civil Action No. 1:20-cv-11600

### COMPLAINT FOR DECLARATORY
### AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      The Commonwealth of Massachusetts ("Commonwealth") files this action to challenge an unlawful rule that prevents colleges and universities across the state from providing federally allocated emergency assistance to vulnerable students during the unprecedented COVID-19 public health crisis.

2.      As part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act" or "Act"), Congress created a program to provide emergency assistance to colleges, universities, and students struggling as a result of the pandemic. This program—known as the Higher Education Emergency Relief Fund ("HEERF")—gives billions of dollars to colleges and universities and requires them to use a portion of these funds to provide emergency grants to students.

3.      As the defendants stressed in their initial guidance concerning the program, the CARES Act places no relevant restrictions on eligibility for grants and gives colleges and

universities the authority to distribute funds as necessary to meet the needs of students impacted by the disruption of campus operations due to the public health crisis.

4.      The defendants, however, have now reversed course and issued an Interim Final Rule ("IFR") that restricts eligibility to students who are also eligible to receive non-emergency federal financial aid under Title IV of the Higher Education Act of 1965 ("Title IV").

5.      The IFR deprives colleges and universities of the flexibility Congress granted them in the CARES Act to address needs on their campuses. And it unlawfully excludes tens of thousands of Massachusetts students from receiving the assistance they need to safely continue their education.

6.      Because of the IFR, Massachusetts colleges and universities are stuck with the costs and burdens of implementing the unlawful restriction and providing relief for ineligible students in acute need, including many who will be unable to continue their education unless they obtain financial assistance.

7.       The defendants have violated the Administrative Procedure Act by imposing eligibility restrictions that are arbitrary and capricious, not in accordance with the law, in excess of their statutory authority, and contrary to the Spending Clause and separation of powers principles of the United States Constitution. The Commonwealth seeks to enjoin enforcement of, and set aside, the IFR so that colleges, universities, and students in Massachusetts will be relieved of further harm.

## **JURISDICTION AND VENUE**

8.      The Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 and may enter declaratory, injunctive, and other relief under 28 U.S.C § 2201(a) and 5 U.S.C. §§ 702, 705-706.

9.     The District of Massachusetts is a proper venue for this action under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1)(C).

## PARTIES

3.     The Commonwealth of Massachusetts, represented by and through its Attorney General, is a sovereign State of the United States. This action is brought on behalf of the Commonwealth by Attorney General Maura Healey, who has both statutory and common-law authority and the responsibility to represent the public interest for the people of Massachusetts in litigation, as well as to represent the Commonwealth, state agencies, and officials in litigation. Mass. Gen. Laws ch. 12, § 3; *Feeney v. Commonwealth*, 366 N.E.2d 1262, 1266-67 (Mass. 1977).

4.     Defendant United States Department of Education ("Department") is an executive agency of the United States government. The Department's principal address is 400 Maryland Avenue, SW, Washington, DC 20202.

5.     Defendant Betsy DeVos is the Secretary of the Department of Education ("Secretary").  She is named in her official capacity. Her principal address is 400 Maryland Avenue, SW, Washington, DC 20202.

6.     The Department and the Secretary are responsible for administering and distributing the HEERF in accordance with the CARES Act.

## FACTUAL ALLEGATIONS

I.     **The COVID-19 Pandemic:**

7.     The COVID-19 pandemic has created an unprecedented public health and economic crisis in Massachusetts and across the country.

8.      The Commonwealth reported its first confirmed case of COVID-19 on February 1, 2020. Over the next month, the rate of infection began to increase exponentially.

9.      On March 10, 2020, the Governor of Massachusetts declared a state of emergency, and on March 13, 2020, President Trump declared a national emergency.

10.      Beginning immediately thereafter and continuing through March 2020, colleges and universities ("institutions of higher education" or "IHEs") in Massachusetts—as across the country—placed restrictions on in-person activities on their campuses, cancelled classes, and then transitioned to remote learning systems. These changes included closing dormitories, dining halls, and other spaces that students had previously relied on for food, shelter, and other basic needs.

11.      Although Massachusetts has made significant progress in combatting the virus, COVID-19 continues to present a severe risk to public health and safety. To date, there have been more than 116,000 confirmed cases and more than 8,700 confirmed deaths in Massachusetts attributable to COVID-19.

12.      Massachusetts is now engaged in a process of structured reopening, which requires that residents, businesses, and institutions—including IHEs—take specific precautions to ensure proper social distancing, sanitization, hygiene, and other measures.

13.      The Commonwealth has relied and continues to rely on HEERF and other CARES Act funding in designing this reopening policy to prevent spread of the COVID-19 virus while minimizing disruption and harm to businesses, institutions, and residents.

14.      For IHEs, the Massachusetts Department of Higher Education has issued specific reopening guidance which prioritizes and balances health and safety, meaningful educational progress, research and innovation, and minimizing adverse economic impacts.

15.     Pursuant to Massachusetts policy, most Massachusetts IHEs—including all public colleges and universities—will continue to utilize some form of remote learning for the 2020-2021 academic school year.

16.     The transition to remote learning has had a severe impact on the financial health of IHEs in Massachusetts. In addition to the costs of establishing or expanding remote learning platforms, IHEs have lost hundreds of millions of dollars in revenue from, *inter alia,* housing and dining programs, cancelled on-campus events (including athletics), and falling student enrollment.

17.     The transition has also caused significant hardships for students. With campuses closed or restricted, students have been forced to assume increased costs for housing, food, and access to the technology—including computers and high-speed internet—that they need to effectively participate in remote learning. At the same time, thousands of students have lost on-campus and off-campus jobs, and many have been unable to find alternative employment.

II.     **The CARES Act and the Higher Education Emergency Relief Fund:**

18.     The CARES Act, Pub. L. No. 116-136 (2020), was signed into law on March 27, 2020. Among other provisions, it appropriated approximately $30.75 billion to the Department "to prevent, prepare for, and respond to coronavirus, domestically or internationally."

19.     The Act directs the defendants to allocate approximately $14.25 billion of this money to establish the HEERF.

20.     Section 18004 of Act requires the defendants to distribute approximately $12.56 billion of the HEERF funds to IHEs according to the following statutory formula: 75 percent based on each IHE's relative share of the full-time equivalent ("FTE") enrollment of Pell Grant

recipients; and 25 percent based on their relative share of the FTE enrollment of all other students ("Non-Pell Grant Funds").[1]

21.    IHEs, in turn, must use at least 50 percent of the HEERF funds they receive to provide emergency grants to students to assist with "expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care)" ("HEERF Student Grants").

22.    The Act contains no relevant restrictions on student eligibility for HEERF Student Grants or on IHEs' authority to determine how to distribute grants to their students.

**III.    Guidance and Rulemaking Concerning HEERF Student Grants:**

**A. Initial Guidance:**

23.    On April 9, 2020, the Defendants informed eligible IHEs of the amount of HEERF Student Grant funds they would receive.

24.    Consistent with the Act, the defendants calculated each IHE's share of Non-Pell Grant Funds based on its total FTE enrollment—including international students, undocumented students, asylum seekers, and others who are ineligible for federal financial assistance under Title IV.

25.    The same day, the defendants published a letter providing guidance to IHEs concerning HEERF Student Grants (the "April 9 Guidance"). The letter confirmed that IHEs had "significant discretion over how to award emergency assistance to students"; that each IHE had the authority to "develop its own system and process for determining how to allocate these

---

[1] The formula excludes students who were "exclusively enrolled in distance education courses prior to the coronavirus emergency." CARES Act §§ 18004(a)(1)(A), (B).

funds"; and that the "only statutory requirement is that the funds be used to cover expenses related to the disruption of campus operations due to coronavirus."[2]

26.     Also on April 9, the defendants issued a Funding Certification and Agreement ("Certification") that IHEs were required to execute in order to receive HEERF funds.

27.     The Certification requires IHEs to distribute HEERF Funds "consistent with all applicable laws," but specifies that the defendants "do not consider…[HEERF Student Grants] to constitute Federal financial aid under Title IV of the HEA." [3]

28.     IHEs immediately began executing Certifications and accepting HEERF funds.

29.     IHEs that fail to comply with the Certification are subject to penalties, including suspension and debarment from receiving federal funding.

**B. Announcement of Eligibility Restrictions and the Interim Final Rule:**

30.     On or about April 21, 2020, after many IHEs had already executed Certifications for HEERF funds, the defendants suddenly reversed their position and began attempting to impose restrictions on IHEs' disbursement of HEERF Student Grants.

31.     On April 21, 2020, in "Frequently Asked Questions" published to its website, the Department announced that only students who were eligible to receive federal financial assistance under Title IV were eligible to receive HEERF Student Grants.[4]

---

[2] *See* Secretary DeVos Letter to College and University Presidents, U.S. Dep't of Educ. (April 9, 2020), https://tinyurl.com/y7f9tlrk.

[3] *See* Recipients Funding Certification and Agreement: Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, U.S. Dep't of Educ., https://tinyurl.com/y8j7m8t3.

[4] *See Higher Education Emergency Relief,* Frequently Asked Questions About the Emergency Financial Aid Grants to Students under Section 18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, U.S. Dep't of Educ., https://tinyurl.com/yajnjpr2.

32.     According to statements by Secretary DeVos, the eligibility restriction was based on the defendants' belief that "the CARES Act was written to help Americans recover from the coronavirus pandemic."[5] But the restriction excludes many citizens, while allowing support to flow to some noncitizens.

33.     Title IV requires that a student, among other things: be a U.S. Citizen, permanent resident, or immigrant who meets other specific criteria;[6] maintain "satisfactory progress" in their course of study, defined as either having a C average or academic standing consistent with the IHE's standards for graduation, at the end of the second academic year; not owe a refund or be in default on federally-backed student loans or grants; and be a high school graduate or have a General Educational Diploma ("GED"). 20 U.S.C. §§ 1091(a), (c), and (d).

34.     Ineligible students include those who are: undocumented, have a grant of Deferred Action for Childhood Arrivals ("DACA") or Deferred Enforced Departure ("DED"), have Temporary Protected Status ("TPS"), are awaiting a determination on an application for asylum, are attending school on a F-1, J-1, or M-1 international student visa, are pursuing their GED while enrolled at an IHE, owe a refund on a federal loan or grant, or have not maintained satisfactory academic standing after two years of study.

35.     Defendants had not previously indicated that HEERF Student Grants would be subject to such a restriction. In fact, the April 21 announcement contradicted the April 9 Guidance and the Certification.

---

[5] See U.S. Department of Education, *U.S. Department of Education Issues Rule to Protect American Taxpayers from Waste, Fraud, and Abuse, Ensure COVID-19 Relief Funds Get to Eligible Students* (July 11, 2020), https://tinyurl.com/y6lfopvm.

[6] An eligible noncitizen must be "able to provide evidence from the Immigration and Naturalization Service that he or she is in the United States for other than a temporary purpose with the intention of becoming a citizen or permanent resident." 20 U.S.C. § 1091(a)(5).

36.     On June 17, 2020, the defendants formally imposed the eligibility restrictions on the HEERF Student Grant program through an interim final rule (the "IFR") titled "Eligibility of Students at Institutions of Higher Education for Funds Under the Coronavirus Aid, Relief, and Economic Security (CARES) Act," 85 Fed. Reg. 36494.

37.     The IFR inserted the Title IV eligibility restriction for HEERF Student Grants into the Department's regulations governing federal student assistance. *See* 34 C.F.R. § 668.2.

38.     In the IFR, the defendants acknowledge that the Act does not impose the Title IV restriction on eligibility for HEERF Student Grants.

39.     Further, the defendants do not contend that the Act grants them general rulemaking authority concerning HEERF Student Grants.

40.     Rather, the defendants assert that they are exercising their "narrow interpretative authority" to define the word "student," as used in Section 18004 of the Act, to mean a student "who is, or could be, eligible…to participate in programs under title IV of the HEA." 85 Fed. Reg. at 36497.

41.     The IFR does not acknowledge or explain the conflict between the eligibility restrictions and the April 9 Guidance and Certification.

42.     The IFR asserts that the Title IV restriction is necessary to prevent "waste, fraud, and abuse" in the HEERF Student Grant program. Specifically, the defendants contend that, but for the restriction, IHEs might create cheap on-line classes "and then use the HEERF grant funding to incentivize individuals not qualified under title IV to enroll as paying students." 85 Fed. Reg. at 36497-98.

43.     The defendants do not allege that any IHE has attempted such a scheme, and the IFR contains no evidence indicating any are likely to do so.

44.    The regulatory changes made by the IFR became effective immediately upon publication in the Federal Register.

45.    The IFR provided for post-implementation comments to be submitted by July 17, 2020.

46.    The Commonwealth submitted a timely comment opposing the IFR on July 17, 2020, through its Attorney General.

**C.  Impact of the IFR:**

47.    By unlawfully restricting IHEs' control over HEERF funds, the IFR has harmed, and will continue to harm, colleges, universities, and students nationwide and in Massachusetts, as well as harming the Commonwealth as a whole.

48.    In the IFR, the defendants acknowledge that the eligibility restrictions imposed by the IFR will exclude over one million students from receiving HEERF Student Grants. *See* 85 Fed. Reg. 36500. This figure is based primarily on enrollment of "non-resident aliens." *Id.* The IFR, however, also prohibits many residents and U.S. Citizens from receiving HEERF Student Grants, including students who have enrolled in school while pursuing their GED, and students who have fallen behind in their studies such that they are no longer eligible for Title IV.

49.    Some of the Commonwealth's most vulnerable students are excluded by the IFR—including many first-generation, low-income, and minority students. Many of these students will be compelled to disenroll and discontinue or delay their education unless they receive financial assistance. The IFR acknowledges that IHEs will likely suffer "declining enrollment and the loss of ancillary revenue" if aid is not made available to students in need. 85 Fed. Reg. at 36496.

50.     In order to support their students and prevent this outcome, many IHEs have used, and will continue to use, scarce institutional funds to provide substitute assistance to students who can't receive HEERF Student Grants under the IFR.

51.     The IFR also imposes, and will continue to impose, administrative burdens on IHEs associated with confirming students' Title IV eligibility.

52.     In particular, as the defendants acknowledge, determining Title IV eligibility for enrolled students who have not completed a Free Application for Federal Student Aid ("FAFSA") is complicated and time-consuming. 85 Fed. Reg. at 36500.

53.     Because of a lack of resources and counseling, low-income, minority, and/or first-generation students are less likely to have completed a FAFSA. *Id.* At Massachusetts community colleges in particular, many students have not completed FAFSAs, even though they would otherwise be eligible for financial aid under Title IV.

54.     In Massachusetts, the rate at which students are completing FAFSAs has declined by more than 10% since the onset of the COVID-19 pandemic.[7]

55.     The defendants calculate that determining eligibility under the IFR will involve more than 25,600 additional hours of paperwork and cost IHEs more than $1.1 million. *See* 85 Fed. Reg. at 35601.

**IV.     Harm to Massachusetts:**

56.     Massachusetts is home to more than one hundred colleges and universities which enroll more than 600,000 students each year.

---

[7] Deirdre Fernandes, *Fewer students are applying for financial aid for college – a worrying sign about who will show up this fall*, Boston Globe (June 6, 2020), https://tinyurl.com/y4gkn7td

57.     Among these IHEs, are public institutions of higher education, which include the five campuses of the University of Massachusetts[8]; nine State Universities[9]; and fifteen Community Colleges[10] (collectively "Massachusetts public institutions of higher education" or "MPIHEs"). MPIHEs are created and funded by the Commonwealth, *see* M.G.L. c. 15A, § 5, and they enroll approximately 275,000 students.

58.     Massachusetts IHEs were collectively allocated almost $300 million in HEERF Funds, including more than $130 million for MPIHEs. At least half of these funds were designated for HEERF Student Grants.

59.     Many Massachusetts IHEs, including MPIHEs, executed the Certification and accepted HEERF Student Grant funds before the defendants imposed the Title IV eligibility restrictions.

60.     Many Massachusetts IHEs, and almost all MPIHEs, have remaining HEERF Student Grant Funds that they intend to distribute during the 2020-2021 academic year. For example, MPIHEs have distributed approximately $42,507,820 and have approximately $23,172,109 remaining to be distributed.

61.      The IFR has forced, and will continue to force, Massachusetts IHEs to expend scarce resources, including public funds at MPIHEs, to comply with the Title IV eligibility restrictions. These include the costs of creating, implementing, and maintaining application and

---

[8] These are UMass Amherst, UMass Boston, UMass Dartmouth, UMass Lowell, and UMass Worcester (also known as UMass Medical School).

[9] These are Bridgewater State University ("SU"), Fitchburg SU, Framingham SU, Massachusetts College of Art and Design, Massachusetts Maritime Academy, Massachusetts College of Liberal Arts, Salem SU, Westfield SU, and Worcester SU.

[10] These are Berkshire Community College ("CC"), Bristol CC, Bunker Hill CC, Cape Cod CC, Greenfield CC, Holyoke CC, Massachusetts Bay CC, Massasoit CC, Middlesex CC, Mount Wachusett CC, Northern Essex CC, North Shore CC, Quinsigamond CC, Roxbury CC, and Springfield Technical CC.

reporting systems; communicating eligibility requirements to students; assisting students with applications and associated paperwork, including the FAFSA; reviewing applications and associated records; and making eligibility determinations.

62.     The IFR has prevented, and will continue to prevent, Massachusetts IHEs from distributing grants to tens of thousands of vulnerable students who need assistance in order to safely and effectively continue their education.

63.     As a result, the IFR has disrupted, and will continue to disrupt, higher education throughout Massachusetts.

64.     At the extreme, many students who are ineligible under the IFR have been forced, and will continue to be forced, to disenroll from school.

65.     Increasing disenrollment has deprived, and will continue to deprive, Massachusetts IHEs, including MPIHEs, of tuition and other revenues.

66.     In order to mitigate the harm caused by the IFR, many Massachusetts IHEs have provided, and will continue to attempt to provide, substitute assistance to ineligible students by drawing from institutional and other funds.

67.     MPIHEs have used and will continue to use their public institutional funds to cover these expenses.

68.     However—particularly in the face of the crisis created by the COVID-19 pandemic—Massachusetts IHEs do not have sufficient resources to meet the needs of Title IV ineligible students without using the HEERF Student Grant funding that remains.

69.     Massachusetts has developed carefully calibrated policies for IHEs to keep students, staff, and faculty safe while mitigating the social, economic, and other harms of the public health crisis.

70.     The Commonwealth has relied on HEERF and other CARES Act assistance in developing these polices.

71.     The IFR frustrates Massachusetts's response to the COVID-19 crisis.

## CLAIMS

### COUNT ONE
### Violations of Article I of the United States Constitution - Separation of Powers and the Spending Clause

72.     The Commonwealth realleges and incorporates by reference each of the paragraphs of this Complaint.

73.     The eligibility restrictions created by the IFR are contrary to the Spending Clause of the United States Constitution and separation of powers principles. Without limiting the foregoing:

74.     Article I, Section VIII of the Constitution vests in Congress the power to spend to "provide for . . . the general Welfare of the United States." Incident to this power, Congress has the exclusive authority to place restrictions or conditions on the receipt and use of federal funds.

75.     Congress neither imposed Title IV eligibility restrictions on HEERF Student Grant funds nor delegated authority to the defendants to do so. The defendants lack constitutional authority to place restrictions on the distribution of funds appropriated by Congress that were not authorized by Congress. The defendants similarly lack authority to suspend or debar IHEs from receiving federal funding for failing to comply with the eligibility restrictions.

76.     Further, the power to impose restrictions on federal funds under the Spending Clause is not unlimited. When Congress seeks to impose restrictions on the receipt or use of

funds, it must do so unambiguously before the funds are accepted; and the restrictions must be related to the federal interest underlying the funding program.

77.     Here, the Title IV eligibility restrictions were not unambiguously imposed by Congress in the CARES Act. Rather, the defendants retroactively imposed the restrictions after IHEs had accepted HEERF Student Grant funds.

78.     The restrictions are also not related to the federal interest underlying the HEERF program enacted by Congress. Congress created the program to provide IHEs and students with emergency financial assistance due to the COVID-19 pandemic. The CARES Act grants IHEs maximum flexibility to tailor the distribution of assistance to meet needs on their campuses. The restrictions impose additional costs and burdens on IHEs and prevent them from distributing aid to students in need.

79.     The eligibility restrictions imposed by the IFR are unconstitutional and must be enjoined.

## COUNT TWO
## Violations of the Administrative Procedure Act

80.     The Commonwealth realleges and incorporates by reference each of the paragraphs of this Complaint.

81.     Under the Administrative Procedure Act, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or not in accordance with the law"; "contrary to constitutional right, power, privilege, or immunity"; or "in excess of statutory . . . authority." 5 U.S.C. §§ 706(2)(A)-(C).

82.     The eligibility restrictions created by the IFR are arbitrary, capricious, and not in accordance with the law; contrary to separation of powers principles and the Spending Clause of

the U.S. Constitution; and in excess of the defendants' statutory authority under the CARES Act. Without limiting the foregoing:

83.     The CARES Act neither imposes Title IV eligibility restrictions on HEERF Student Grants nor delegates authority to the defendants to do so through rulemaking.

84.     No other provision of federal law requires the imposition of Title IV eligibility restrictions to HEERF Student Grants or delegates authority to the defendants to do so through rulemaking.

85.     Through the IFR, the defendants have imposed Title IV eligibility restrictions on HEERF Student Grants by adopting a definition of the word "student" that is contrary to its plain meaning and usage in Section 18004 of the CARES Act.

86.      The defendants failed to provide IHEs—including MPIHEs—notice of the restrictions before they executed the Certification and accepted federal funds.

87.     In fact, the IFR is inconsistent with and reverses the defendants' initial guidance to IHEs concerning HEERF Student Grants without adequate cause, discussion, explanation, or consideration of important aspects of the problem, including harm to IHEs and students.

88.     The defendants failed to explain their abrupt change in position, adequately consider the harm that it would cause IHEs and students, or consider the reliance interests of IHEs, students, and others on the previous guidance. In addition, the IFR runs counter to the evidence before the agency.

89.     The IFR is invalid and must be set aside.

### PRAYER FOR RELIEF

WHEREFORE, the Commonwealth of Massachusetts requests that this Court grant the following relief:

(1)     Enter a judgment declaring that the IFR, as well as the relevant portions of 34

C.F.R. § 668.2 adopted by the IFR, violate the Administrative Procedure Act and the Spending

Clause to the U.S. Constitution;

(2)     Invalidate and set aside the IFR, as well as the relevant portions of 34 C.F.R.

§ 668.2 adopted therein;

(3)     Enjoin the defendants from taking any action to enforce the IFR, as well as the

relevant portions of 34 C.F.R. § 668.2 adopted therein; and

(4)     Grant any other or additional relief that this Court may determine is necessary or

appropriate.


                                Respectfully submitted,

                                COMMONWEALTH OF MASSACHUSETTS,

                                ATTORNEY GENERAL
                                MAURA HEALEY

                                  /s/ Abigail Taylor
                                Abigail B. Taylor, BBO # 670648
                                Jonathan Burke, BBO # 673472
                                David Ureña, BBO # 703076
                                Abrisham Eshghi, BBO # 703020
                                Assistant Attorneys General
                                Office of the Massachusetts Attorney General
                                One Ashburton Place
                                Boston, MA 02108
                                (617) 963-2559
Dated: August 26, 2020          abigail.taylor@mass.gov